UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE CASTRO,

                        Plaintiff,

            -against-                                          25-CV-8167 (LLS)

THE CITY UNIVERSITY OF NEW YORK                    ORDER OF DISMISSAL
(CUNY),

                        Defendant.

LOUIS L. STANTON, Senior United States District Judge:

        Plaintiff, who is appearing *pro se*, brings this action under Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; and 42 U.S.C. § 1983. He also

asserts a claim under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297.

Plaintiff alleges that his employer, Defendant City University of New York ("CUNY"), failed to

accommodate his Pentacostal religious practices and terminated him in retaliation for a

complaint he made to CUNY's human resources department concerning the denial of his

scheduling request to accommodate his Sunday worship schedule. He also asserts that CUNY

discriminated against him on the basis of age by affording younger employees more robust due

process protections in investigations by CUNY's human resources department and allowing

younger employees to complete their probationary periods without being terminated. He alleges

that all of this occurred in 2014. He further explains that he brought a civil action in New York

Supreme Court against CUNY, exclusively under New York law, related to the same set of

occurrences as described in this federal action, but he adds that the state court granted summary

judgment for CUNY on the merits. *See Castro v. City Univ. of N.Y.*, No. 506725/2015, 2021 WL

12360479 (N.Y. Sup. Ct. Jan. 4, 2021), *aff'd* 238 A.D.3d 1106 (App. Div. 2025). By order dated

October 26, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint for failure to state a claim on which relief can be granted.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

The following facts are drawn from the Complaint ("Compl.," ECF No. 1), the First Amended Complaint ("FAC," ECF No. 7), and the Second Amended Complaint ("SAC," ECF No. 9).[1]

Plaintiff alleges that in 2014, when all operative events occurred, he was a 48-year old Pentacostal Christian employed as a peace officer at CUNY's College of Technology, which is located in Brooklyn, New York. (SAC, at 6-7, 25; *see also* Compl. at 3.) He asserts that on

---

[1] The Court quotes from the complaints verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise. Moreover, in light of the special solicitude afforded to *pro se* litigatnts, the Court liberally construes all three pleadings as the operative complaint, even though Plaintiff filed the Second Amended Complaint without leave of the Court.

August 13, 2014, he "verbally requested a change in work schedule from Sgt. Thompson and Lt. Genevieve Clark in order to attend Pentacostal Christian worship services, a central tenet of [Plaintiff's] sincerely held religious beliefs." (SAC, at 8; *see also* Compl., at 5; FAC, at 1, 7.) He adds that "[t]hese verbal requests were ignored." (SAC, at 8; FAC, at 7).

Later that day, Plaintiff "was involved in a dispute with Lt. Clark regarding the timing of his meal break." (SAC at 8; FAC, at 8.) In an apparent effort to resolve the dispute, Plaintiff called "base" to verify the correct time of his lunch break. (SAC at 8; FAC, at 8.) Plaintiff alleges that when Lt. Clark learned that Plaintiff had called "base" concerning the dispute, she "began harassing and intimidating Plaintiff by repeatedly questioning why he had called the base." (SAC at 8; FAC, at 8.)

Still later that day, Plaintiff filed a complaint with CUNY's human resources department concerning the dispute over the time of his lunch break. (SAC at 8; FAC, at 8.) He alleges that, contrary to CUNY policy, the human resources department routed the complaint "to Public Safety and never forwarded it to HR/EEO." (SAC, at 8; FAC, at 8.)

On the next day, CUNY issued Plaintiff a "Counseling Memorandum," which CUNY asserted should not be construed as discipline but which Plaintiff says bore the hallmarks of adverse employment action because it "was placed in Plaintiff's personnel file and constituted a formal, negative entry." (SAC at 9; FAC, at 9.)

On August 31, 2014, Plaintiff submitted a formal written request to Lt. Clark "seeking Sundays off for worship." (SAC, at 1; FAC, at 9; *see also* SAC, at 10.) Plaintiff asserts that on the same day, Sgt. Thompson learned of the accommodation request, expressed "hostility" to Plaintiff about the request, and "question[ed] whether [Plaintiff] was 'really a Christian.'" (SAC, at 10; FAC, at 10.) He adds that over the following month, Sgt. Thompson frequently made

3

offensive comments about Plaintiff's religious beliefs at roll call, in the presence of Plaintiff's colleagues. (SAC, at 10, 22, 25; FAC, at 9.)

Plaintiff explains that CUNY denied his request for a religious accommodation even though it had "granted religious accommodations to other officers whose beliefs conflicted with workplace policies." (SAC at 8; *see also id*., at 11.) In support of that allegation, Plaintiff identified several specific Muslim employees who were granted requests to accommodate their worship services and modify CUNY's workplace grooming standards. (SAC at 8, 11; FAC, at 8, 29.)

On October 8, 2014, CUNY served Plaintiff with a termination notice, ending his probationary employment with CUNY. (SAC at 12; *see also id*., at 19; FAC, at 11.) Plaintiff contends that this termination constituted discrimination on the basis of age. In support of that allegation, he identified younger CUNY employees who were "afforded full contractual and policy-based due process protections, including written charges, progressive discipline, and union representation, underscoring the disparate and discriminatory manner in which Defendant applied these safeguards." (SAC at 13; *see also id.*, at 15-18, 22; FAC, at 11.)

Plaintiff asserts that he filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act and that the EEOC issued him a right-to-sue letter on March 6, 2015. (SAC, at 3; *see also* FAC, at 3.) He explains that he subsequently filed a civil action against CUNY in the New York Supreme Court, Kings County. (SAC at 3-4; *see also* FAC, at 4.) He further explains that his "federal claims for religious discrimination under Title VII and age discrimination under the ADEA were never pleaded, litigated, or adjudicated in Plaintiff's prior state-court action, which was expressly limited . . . to state-law employment discrimination and retaliation." (SAC at 3; FAC, at 4; *see*

*also* SAC, at 4.) He contends that "the state court lacked authority to adjudicate" the federal

claims asserted in this civil action. (SAC, at 6.)

Plaintiff alleges that the state court granted summary judgment to CUNY in its entirety

(SAC at 4; FAC, at 4), and among the exhibits attached to the Second Amended Complaint is the

state court's decision (ECF No. 9-1, at 172). The state court's decision reads, in full:

> Defendant's motion for summary judgment is granted. The defendant determined, and its papers establish, that the plaintiff was terminated for insubordination, unprofessionalism and poor performance as a peace officer. Defendant further contends that plaintiff does not meet the standard for claims of hostile work environment or retaliation. In opposition, the plaintiff claims that he was treated disparately from two Muslim co-workers because his employment with the defendant was terminated one month prior to theirs, and that said treatment demonstrates discriminatory behavior on the part of the defendant. This contention, however, is unsupported by the law and the evidence, particularly in light of the fact that the two co-workers that plaintiff compares himself with were also terminated from their employment for the defendant. As the plaintiff fails to raise any questions of fact in his opposition papers regarding his claims of discrimination, retaliation and hostile work environment, the defendant's motion is granted in its entirety. Case dismissed.

This constitutes the decision and order of the court.[2]

Plaintiff commenced this action on October 3, 2025. He filed a First Amended Complaint

on November 24, 2025 and a Second Amended Complaint on December 16, 2025.

## DISCUSSION

### A. Claim Preclusion

Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not

bring a new case that includes claims or defenses that were *or could have been* raised in an

earlier case in which the same parties were involved if that case resulted in a judgment on the

---

[2] The state court's decision is reported as *Castro v. The City University of New York*, No. 506725/2015, 2021 WL 12360479 (N.Y. Sup. Ct. Jan. 4, 2021). On May 28, 2025, the New York State Supreme Court, Appellate Division, affirmed the trial court's decision. 238 A.D.3d 1106 (App. Div. 2025).

merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion "prevents parties from raising issues that *could have been raised* and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020) (emphasis added); *see VDARE Found., Inc. v. James*, No. 23-1084, 2025 WL 3648783, at *3 (2d Cir. Dec. 17, 2025) ("This rule 'applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation.'") (quoting *In re Hunter*, 4 N.Y.3d 260, 269 (2005)). If a litigant files a new suit and "advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Lucky Brand Dungarees*, 140 S. Ct. at 1594 (quoting *Brown*, 442 U.S. at 131). Claims are treated as the same if they "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees*, 140 S. Ct. at 1595 (citations and internal quotation marks omitted)).

Claim preclusion generally applies if "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted).

The elements of claim preclusion are satisfied here. First, the state court's decision granting summary judgment reached the merits and resolved them in CUNY's favor.

Second, the litigants in the state-court action and in this federal civil action are the same.

Third, the state court was of competent jurisdiction to entertain both the state-law claims and the federal claims that Plaintiff asserts in this federal action. As the United States Supreme

Court has recognized, "state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights[.]" *Haywood v. Drown*, 556 U.S. 729, 735 (2009) (citation omitted); *see also Lyons v. Davis*, No. 17-CV-4504 (RA), 2018 WL 4759742, at *5 (S.D.N.Y. Sept. 30, 2018) (explaining that *Haywood* stands [ ] for the uncontroversial proposition that a state may not selectively divest its own courts of jurisdiction to hear claims arising under federal law, which runs afoul of the Supremacy Clause"). Plaintiff contends otherwise, as he argues that "the state court lacked authority to adjudicate" the federal claims asserted in this civil action. (SAC, at 6.) The Court construes this argument as suggesting that New York state courts do not have jurisdiction to entertain federal claims, such as those under Section 1983, Title VII, or the ADEA. But *Haywood* leaves no doubt: New York state courts have jurisdiction to adjudicate claims under federal civil rights statutes, including Section 1983, Title VII, and the ADEA.

Fourth, the causes of action in the prior state-court action and this federal action are the same. To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001), or whether facts essential to the second suit were present in the first suit, *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted). Because the claims in both cases "involve a common nucleus of operative facts," *Cayuga Nation*, 6 F.4th at 375, the causes of action in both cases are identical.

Although claim preclusion is an affirmative defense to be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c), the Court may, on its own initiative, raise the issue. *See, e.g.*,

*Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001) (affirming district court's dismissal on grounds of issue preclusion even though defendant failed to plead that defense, and noting that "principles of preclusion involve" not only "the rights and interests of the parties," but also "important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions"); *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (affirming *sua sponte* application of collateral estoppel in motion for summary judgment); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) ("The failure of a defendant to raise *res judicata* in [an] answer does not deprive a court of the power to dismiss a claim on that ground.").

Accordingly, the Court dismisses Plaintiff's claims under federal law raised in the present action, including his claims under Section 1983, Title VII, and the ADEA, under the doctrine of claim preclusion, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205-06 (2d Cir. 2002) (holding that the plaintiff's IFP action, which was dismissed as barred by claim preclusion, was properly characterized as a dismissal for failure to state a claim on which relief may be granted).

### B. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms

the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### C. Leave to Amend Denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

### CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court directs the Clerk of Court to enter a civil judgment in this action.

SO ORDERED.

Dated:    December 29, 2025
          New York, New York

                                        _____
                                        Louis L. Stanton
                                        U.S.D.J.

9