UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE CASTRO,

                    Plaintiff,

          -against-                                          25-CV-8167 (ALC)

CITY UNIVERSITY OF NEW YORK;                          ORDER OF DISMISSAL
GENEVIEVE CLARK; VERA AMARAL;
LIONEL PRESUME; EFREN MALDONADO;
MICHAEL THOMPSON,

                    Defendants.

ANDREW L. CARTER, JR. United States District Judge:

    Plaintiff, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, Title VII of

the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 ("ADEA").

He alleges that Defendant City University of New York ("CUNY") and four of its employees

discriminated against him on the basis of his age, religion, color, and national origin and

subsequently terminated him.  Plaintiff sues CUNY, Genevieve Clark, Vera Amaral, Lionel

Presume, Efren Maldonado, and Michael Thompson.  He seeks monetary, declaratory, and

injunctive relief.

    By order dated October 26, 2025, the court granted Plaintiff's request to proceed *in forma*

*pauperis* ("IFP"), that is, without prepayment of fees. For the reasons that follow, the Court

dismisses the third amended complaint.

## STANDARD OF REVIEW

    The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or

malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see Livingston v.*

*Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a

complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). The Court need not accept, however, "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

### A.      Procedural history

Plaintiff commenced this action on October 3, 2025, by filing his complaint. ECF No. 1. On November 24, 2025, he filed a first amended complaint as of right ECF No. 7, and on December 16, 2025, he filed a second amended complaint without first seeking and obtaining the court's leave to do so ECF No. 9.

This action was thereafter assigned to the Hon. Louis S. Stanton. By order dated December 29, 2025, Judge Stanton collectively construed all three pleadings as the operative pleading and dismissed this action on claim preclusion grounds in light of the state court

proceedings in which CUNY prevailed on the merits. *See Castro v. City Univ. of N.Y.*, No. 506725/2015, 2021 WL 12360479 (N.Y. Sup. Ct. Jan. 4, 2021), *aff'd* 238 A.D.3d 1106 (App. Div. 2nd Dep't 2025). Judge Stanton explained:

> The elements of claim preclusion are satisfied here. First, the state court's decision granting summary judgment reached the merits and resolved them in CUNY's favor.
>
> Second, the litigants in the state-court action and in this federal civil action are the same.
>
> Third, the state court was of competent jurisdiction to entertain both the state-law claims and the federal claims that Plaintiff asserts in this federal action. As the United States Supreme Court has recognized, "state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights[.]" *Haywood v. Drown*, 556 U.S. 729, 735 (2009) (citation omitted); *see also Lyons v. Davis*, No. 17-CV-4504 (RA), 2018 WL 4759742, at *5 (S.D.N.Y. Sept. 30, 2018) (explaining that "*Haywood* stands [ ] for the uncontroversial proposition that a state may not selectively divest its own courts of jurisdiction to hear claims arising under federal law, which runs afoul of the Supremacy Clause"). Plaintiff contends otherwise, as he argues that "the state court lacked authority to adjudicate" the federal claims asserted in this civil action. (SAC, at 6.) The Court construes this argument as suggesting that New York state courts do not have jurisdiction to entertain federal claims, such as those under Section 1983, Title VII, or the ADEA. But *Haywood* leaves no doubt: New York state courts have jurisdiction to adjudicate claims under federal civil rights statutes, including Section 1983, Title VII, and the ADEA.

ECF No. 13, at 6-7. The court subsequently entered judgment. ECF No. 14.

On January 30, 2026, Plaintiff filed a notice of appeal, and on February 2, 2026, he filed a motion for relief under Rule 60(b)(2) of the Federal Rules of Civil Procedure. ECF Nos. 16-18. In support of Rule 60(b)(2) relief, Plaintiff contended that he recently discovered evidence that would have changed the outcome of this case. Specifically, Plaintiff set forth evidence, which he asserted that he could not have found with reasonable diligence until just before he filed the Rule 60(b)(2) motion, that other CUNY employees who were younger, had lighter skin, and/or were Muslims were granted accommodations and human resources processes that CUNY denied to him.

By order dated February 11, 2026, Judge Stanton granted Plaintiff's motion under Rule 60(b), vacated the order of dismissal and judgment, and granted Plaintiff leave to file a third amended complaint.  ECF No. 23.  Judge Stanton reasoned: "The effect upon a jury of learning that CUNY had settled charges similar to those plaintiff is making against the same officers, for substantial amounts, is apparent. To suppress that evidence would be a miscarriage of justice." *Id*. at 3.

Plaintiff filed his third amended complaint on March 9, 2026, and this action was thereafter reassigned to my docket.

**B.      The third amended complaint**

The following facts are drawn from the third amended complaint, which is 387 pages long, including exhibits.[1]  ECF No. 24.  In sum, "Plaintiff, a darker-skinned Puerto Rican man, was treated differently than younger, lighter-skinned, non-Puerto-Rican probationary officers who received written notices, HR [human resources] review, and opportunities to complete probation," while Plaintiff was provided with none of those.  *Id*. at ¶ 2.  Plaintiff also explains that he is a Pentacostal Christian over the age of 40 and that other CUNY peace officers who were younger and Muslims received accommodations for their religious observances, which CUNY denied to Plaintiff.  *Id*. at ¶ 7.

In February 2014, CUNY hired Plaintiff as a probationary campus peace officer at the New York City College of Technology.  *Id*. at ¶ 28.  CUNY policy grants probationary employees a "full one-year probationary period."  *Id*. at ¶ 30.  Despite this, as explained below, CUNY terminated Plaintiff before his one-year probationary period had expired. (*Id*.)

---

[1] The Court quotes from the third amended complaint verbatim.  All spelling, grammar, and punctuation are as in the original unless noted otherwise.

Plaintiff explains that his religious practice "requires attendance at Pentacostal worship services on Sundays." *Id*. at ¶ 31. Before he started his employment, Plaintiff's understanding with CUNY was that he would not be asked to work on Sundays in light of his religious observance. Nevertheless, from Plaintiff's first day of work and forward, he was scheduled to work on Sundays. *Id*. at ¶¶ 32-34. Accordingly, on Plaintiff's first day of work, he met with Defendants Clark and Presume, who were Plaintiff's supervisors, and he verbally requested that he be granted Sundays off from work due to religious observance. Contrary to CUNY policy, Defendants Clark and Presume "did not initiate an HR referral, an interactive process, or a written determination as as required" by CUNY policy. *Id*. at ¶ 36.

On August 31, 2014, Plaintiff submitted several written requests for religious accommodations, which Defendant Clark acknowledged receiving on the following day. Despite this, "Plaintiff received no HR referral, no interactive process, and no written determination regarding his religious accommodation prior to his termination." *Id*. at ¶ 37. During this same period, CUNY granted religious accommodations to younger, Muslim probationary peace officers, but not to Plaintiff. *Id*. ¶¶ 37, 39, 42.

Moreover, even though CUNY policy requires that requests for religious accommodation be decided by its human resources department, Plaintiff's request was handled within CUNY's public safety department. *Id*. at ¶¶ 35, 39. That unit denied Plaintiff's request for a religious accommodation without consulting CUNY's human resources department or providing any interactive process to Plaintiff. *Id*. at ¶ 39, 44-45.

The third amended complaint then appears to shift its chronology and describe incidents in early August 2014, when Plaintiff allegedly submitted a harassment complaint to CUNY about Defendant Clark's conduct. *Id*. at ¶ 53. Per CUNY policy, those complaints are required to be

investigated by its Chief Diversity Officer, but Plaintiff's complaint was not. *Id*. at ¶ 54.

Instead, it was handled by Defendant Presume, the Director of Public Safety, who dismissed the

complaint without an investigation. *Id*. at ¶¶ 57-58. Plaintiff also alleges that his harassment

complaint was adjudicated by Defendant Clark, which allegedly violated CUNY policy that

"supervisors who are the subject of a complaint should not take part in disciplinary decisions

involving the complainant." *Id*. at ¶ 63.

On or about October 7, 2014, Defendants Clark, Maldonado, and Presume then

participated in a meeting in which they decided to terminate Plaintiff. *Id*. at ¶¶ 65, 80. Plaintiff

contends that he is in possession of an email from Defendant Clark from two months after the

termination in which she suggests, in sum, that CUNY needed to create a non-discriminatory,

non-pretextual reason for the termination, as Plaintiff's preceding evaluations had all been

positive. *Id*. at ¶¶ 67, 69-70. Ultimately, CUNY cited insuborindation and poor performance as

the reasons for Plaintiff's termination, despite those observations not being made in Plaintiff's

prior evaluations. *Id*. at ¶ 71. Plaintiff alleges that CUNY provided no process during his

termination proceedings, but other younger, lighter-skinned employees were. *Id*. at ¶ 78-79. He

also cites to an action filed in the Eastern District of New York, *Timmer v. City University of

New York*, No. 20-CV-2554, in which a CUNY employee sued some of these same Defendants

concerning retaliation and due process violations; the case resolved by settlement. *Id*. at ¶¶ 116-

120.

**DISCUSSION**

**A.    Claim preclusion**

The Court is aware of, and takes judicial notice that, Plaintiff previously brought an

action in state court, asserting claims solely under state law, concerning the same set of

transactions and occurrences that he describes in the third amended complaint. *See VDARE*

*Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025) ("A court may appropriately take judicial notice of filings and judgments made in state courts." (citing *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021)). The state court's decision reads, in full:

> Defendant's motion for summary judgment is granted. The defendant determined, and its papers establish, that the plaintiff was terminated for insubordination, unprofessionalism and poor performance as a peace officer. Defendant further contends that plaintiff does not meet the standard for claims of hostile work environment or retaliation. In opposition, the plaintiff claims that he was treated disparately from two Muslim co-workers because his employment with the defendant was terminated one month prior to theirs, and that said treatment demonstrates discriminatory behavior on the part of the defendant. This contention, however, is unsupported by the law and the evidence, particularly in light of the fact that the two co-workers that plaintiff compares himself with were also terminated from their employment for the defendant. As the plaintiff fails to raise any questions of fact in his opposition papers regarding his claims of discrimination, retaliation and hostile work environment, the defendant's motion is granted in its entirety. Case dismissed.

*Castro v. The City University of New York*, No. 506725/2015, 2021 WL 12360479 (N.Y. Sup. Ct. Jan. 4, 2021).  On May 28, 2025, the New York State Supreme Court, Appellate Division, affirmed the state trial court's decision.  238 A.D.3d 1106 (App. Div. 2nd Dep't 2025).

Federal courts "are required 'to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so.'"  *VDARE Found.*, 162 F.4th at 83 (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).  "Because the New York Supreme Court issued the relevant prior judgment at issue, [this Court must] apply New York law to determine the preclusive effect of that judgment in this action."  *Id*.  Under New York law, a prior court decision has claim-preclusive effect when there is: (1) "a judgment on the merits . . . from a prior action"; (2) "between the same parties"; and (3) "involving the same subject matter."  *In re Hunter*, 4 N.Y.3d 260, 269 (2005); *see In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (explaining that claim preclusion generally applies if "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior

7

court was of competent jurisdiction, and (4) the causes of action were the same" (citation and internal quotation marks omitted)).  This rule "applies not only to claims actually litigated but also to claims that *could have been raised* in the prior litigation." *VDARE Found.*, 162 F.4th at 83 (quoting *In re Hunter*, 4 N.Y.3d at 269) (emphasis added); *see Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) (explaining that the doctrine of claim preclusion "prevents parties from raising issues that *could have been raised* and decided in a prior action – even if they were not actually litigated" (emphasis added)).

If a litigant files a new suit and "advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Lucky Brand Dungarees*, 590 U.S. at 412 (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  Claims are treated as the same if they "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees*, 590 U.S. at 412 (citations and internal quotation marks omitted)).

The Court finds that all elements of claim preclusion are present here.  First, there can be no dispute that the state court's decision granting summary judgment to CUNY reached the merits of Plaintiff's claims and resolved them in favor of CUNY.  Second, both Plaintiff and CUNY were the litigants in the state court case.  Third, as Judge Stanton observed, the state court was of competent jurisdiction to entertain both the state-law claims and the federal claims that

Plaintiff asserts in this federal action. Fourth, the causes of action in the prior state-court action and this federal action are the same.[2]

This result is not changed by Plaintiff's new allegation in his third amended complaint that some of the same CUNY employees who are sued in this action were previously sued for employment discrimination and that they settled their lawsuits for substantial sums. No matter what those Defendants are alleged to have done to other CUNY employees, the state court concluded that Plaintiff "was terminated for insubordination, unprofessionalism and poor performance as a peace officer."[3] *Castro*, 2021 WL 12360479, at *1. In short, Plaintiff seeks to relitigate the same issues that the state court already considered, over a course of four years, and found to be without merit. The doctrine of claim preclusion therefore bars his claims. For those reasons, the Court dismisses all claims against CUNY for failure to state a claim, on claim preclusion grounds. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205-06 (2d Cir. 2002) (holding that the plaintiff's IFP action, which was dismissed as

---

[2] To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001), or whether facts essential to the second suit were present in the first suit, *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted). Because the claims in both cases "involve a common nucleus of operative facts," *Cayuga Nation*, 6 F.4th at 375, the causes of action in both cases are identical.

[3] Moreover, even if those civil complaints involved comparable conduct to that alleged in this action, "none result[ed] in an adjudication of liability." *Walker v. City of New York,* No. 12–CV–5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar.18, 2014); *cf. Collins v. City of New York,* 923 F.Supp.2d 462, 479 (E.D.N.Y.2013) (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint "[were] insufficient to make a plausible case for municipal liability" under Section 1983 because they either were different from the misconduct alleged in the complaint, post-dated the alleged misconduct in the case at hand, or "involve[d] something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct").

9

barred by claim preclusion, was properly characterized as a dismissal for failure to state a claim on which relief may be granted).

## B.    Issue preclusion

Plaintiff also sues several CUNY employees—Clark, Amaral, Presume, Maldonado, and Thompson—who do not appear to have been parties to the state court action and who were not joined to this action until Plaintiff filed his third amended complaint.  Plaintiff's claims against those Defendants are barred by a different preclusion doctrine: issue preclusion.

Under New York law, the doctrine of issue preclusion (or collateral estoppel) "bars a party from relitigating in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination." *Weiss v. Manfredi*, 83 N.Y.2d 974, 976 (1994); *see Seneca Nation v. Hochul*, 58 F.4th 664, 668 (2d Cir. 2023); *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001).  For issue preclusion to apply: (1) there must be an "identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) plaintiff must have had "a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Pub. Adm'r*, 24 N.Y.2d 65, 71 (1969).

All elements of issue preclusion are present here.  Both this action and the state court action present the common, central legal question of whether CUNY and its employees had a legitimate, non-discriminatory, and non-pretextual reason to terminate Plaintiff.  The state court litigated and decided that issue adverse to Plaintiff, finding that he "was terminated for insubordination, unprofessionalism and poor performance as a peace officer." *Castro*, 2021 WL 12360479 at *1.  Moreover, in none of Plaintiff's four pleadings (including the third amended complaint, which is the operative pleading) and in none of his other submissions does he suggest that he lacked a full and fair opportunity to adjudicate his action in the state trial or appellate

10

courts. Similarly, nothing in the trial court's decision granting summary judgment or the Appellate Division's order affirming it indicate that Plaintiff was unable to fully and fairly present his claims. For these reasons, Plaintiff's claims against Clark, Amaral, Presume, Maldonado, and Thompson are barred by the doctrine of issue preclusion and are dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Wachtmeister v. Swiesz*, 59 F. App'x 428, 429 (2d Cir. 2003) (explaining that a dismissal for issue preclusion is a dismissal for failure to state a claim on which relief may be granted).

**C.    Supplemental jurisdiction declined**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**D.    Leave to amend denied**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Because the defects in Plaintiff's third amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff a fourth opportunity to amend.

## CONCLUSION

Plaintiff's third amended complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated:    June 17, 2026
          New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge

12